JOHN PAUL, as Agent, Plaintiff in Error, v. FLORIDA CITIES BUS Co., Defendant in Error.

200 So. 363
En Banc
Opinion Filed February 11, 1941

*J. W. Salisbury,* for Plaintiff in Error;

*Worley & Gautier* and *Coleman & Cook,* for Defendant in Error.

ADAMS, J.—The plaintiff in error as plaintiff brought this action against the defendant in error as defendant to re-

cover the alleged contract price of certain personal property, to-wit: a franchise to operate motor buses upon the streets of Palm Beach and certain rolling stock used in the exercise of such franchise. It is alleged that the contract sued upon was dated October 1, 1937, and was oral; it is alleged that said property was delivered and accepted; that the sale price was $5,000. The contract was subject to the condition of the defendant obtaining a similar franchise in the near town of West Palm Beach.

The case was submitted to the jury upon pleas of general issue and certain special pleas, one of which was the plea of the statute of frauds alleging that said chattels, nor any part thereof, were delivered and accepted by the buyer.

The court charged the jury on the law relative to the issues made. The jury retired and later come into court and the following occurred:

"JUROR: The question is whether or not the fact that the Florida Cities Bus Co. accepted the franchise or permit that the Palm Beach Bus Service, Inc., was operating on into the Town of Palm Beach and subsequently operated that bus under that permit, whether or not that constituted an acceptance or evidence of the fact that there was some form of agreement between the parties.

"THE COURT: In connection with that, gentlemen, it is a factor that you may take into consideration. If the contract for the sale of the personal property, that is the automobile and franchise, was verbal, then it is necessary that the property be delivered and accepted by the purchaser or else the purchaser is not required to pay for it. If it was a verbal contract, if the defendant accepted possession of the buses, and if the defendant accepted the privileges under the franchise and accepted the assignment of the franchise and operated its buses under the Palm Beach Bus Service, Inc's. franchise, accepted all of those things under

the contract, then it would be an acceptance, and they would have to pay the money under the contract for the purchase of that particular property. By the Florida Cities Bus Company accepting the possession of the property, anything indicating intention to appropriate it for themselves might be taken into consideration, but on the other hand if the Florida Cities Bus Company operated them independently of Palm Beach Bus Service, Inc., or of John Paul, as agent, operated independently of that franchise and not in compliance with that franchise, then the operation of the buses would have nothing to do with it.

"JUROR: Would the fact that the Dodge sedan truck was driven by an employee of the Florida Cities Bus Company to their barn and parked in this barn for a time, would that constitute acceptance upon their part of that equipment?

"THE COURT: It would be determined solely by the facts surrounding that particular operation. If an employee of the defendant corporation drove it for the defendant corporation with the intent of appropriating it for the use of the defendant corporation, with the knowledge and consent of that corporation, then it would be acceptance of that automobile. If it was to be delivered for the plaintiff for storing the said automobile in the barn of the defendant, or an accommodation, then it would not be acceptance of the automobile. You will have to determine whether or not the defendant acquiesced in the receiving of the truck or whether the driver of the truck did it as a matter of convenience for the plaintiff.

"JUROR: Would it be possible for the Florida Cities Bus Company or any other company to operate in the Town of Palm Beach or any other town without a permit?

"THE COURT: They could operate anywhere, of course, without a permit if nobody would bother them. If the

Florida Cities Bus Company operated in Palm Beach, not violating a State law, nobody could molest them, but the Town.

"(Exceptions noted for both parties.)"

While the court originally had correctly stated the law to the jury relative to the statute of frauds yet we are of the opinion from the questions asked and the answers thereto that the jury was misled in that the court did not advise the jury that if they found delivery and acceptance of a part of said chattels the statute was complied with.

Inasmuch as the case must be reversed for another trial we think the trial judge was not authorized in submitting to the jury the issue discussed above because we are of the opinion that the defendant's evidence disproved the plea on this point; therefore the court should as a matter of law have withdrawn this question from the jury.

On November 29, 1937, Mr. Updike, defendant's manager, at the request of Mr. Dunn, defendant's president, wrote a letter to the town manager of Palm Beach wherein it is acknowledged that the alleged contract was made and they in substance evidence their intention of further availing themselves of the benefits of the plaintiff's franchise.

In pursuance of this acknowledged contract the defendant had theretofore, to-wit: on October 15, 1937, begun operating under the franchise. No dissent was made until near the close of the tourist season, namely, March 13, 1938. That was by letter assigning as the only reason that the franchise was not exclusive. Mr. Dunn, the defendant, had known from the beginning an exclusive franchise could not be granted; therefore according to his evidence he was not and could not be misled.

Further, the defendant got actual notice from the Town of Palm Beach upon inquiry of its vice president that the franchise was not exclusive early in October, 1937, and

with such knowledge accepted the franchise and used it all season without dissent.

There is no dispute that the defendant in October, 1937, was willing and did take the plaintiff's right in and to the alleged franchise and availed themselves of the benefits thereof.

No dissent was made until the plaintiff was no longer in position to utilize it and the defendant had placed itself in position to negotiate for their own franchise. The claim of the old necessarily aided them in exclusively negotiating for another.

The plaintiff admitted the real article of value was the franchise. The defendant evidently thought likewise, for it investigated it, but did not the rolling stock. It is therefore our opinion that the defendant's evidence disproved the plea under the statute of frauds and such plea should not have been submitted to the jury.

We make no comment on the sufficiency of the evidence on the other issues inasmuch as the same is conflicting.

For the reasons stated the judgment should be reversed for a new trial not inconsistent with this opinion.

Reversed.

WHITFIELD, BUFORD and CHAPMAN, J. J., concur.

BROWN, C. J., concurs in conclusion.

TERRELL and THOMAS, J. J., dissent.